UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA L TUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-04332-JPH-TAB |
| | ) |
| ASCENSION HEALTH ALLIANCE, INC. | ) |
|    d/b/a ASCENSION, | ) |
| ST. JOSEPH HOSPITAL & HEALTH | ) |
| CENTER, INC. | ) |
|    d/b/a ST. VINCENT KOKOMO | ) |
| HOSPITAL, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART ASCENSION HEALTH ALLIANCE'S MOTION FOR SUMMARY JUDGMENT**

Barbara Tucker worked for Ascension Health Alliance, Inc. for eight years. Her position was eliminated due to a company-wide restructuring of the human resources departments. Ms. Tucker applied for 20 other jobs but was not offered any position. Ms. Tucker alleges this was because of her age and sex. Ascension has filed a motion for summary judgment. For the reasons set forth below, the motion is **GRANTED in part DENIED in part**. Dkt. [39].

**I.
Facts and Background**

Because Ascension has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

1

**A. Facts**

Ms. Tucker began working for Ascension as its Staff Development Coordinator at St. Vincent Kokomo Hospital in 2008. Dkt. 40-1 at 5 (Tucker Dep. 10:12–16). Her position was within the Human Resource Department's Learning and Development Division. *Id.* at 15 (50:21–25). As Staff Development Coordinator, Ms. Tucker's job responsibilities included: overseeing licensing and certifications; conducting orientation programs; keeping human resource records for certain workers; and creating online training for staff. *Id.* at 8–9 (22:15–26:25). In all of Ms. Tucker's performance evaluations, Ascension found that she either met or exceeded expectations in every job category. *See* dkt. 45-2.

In September 2015, Ascension informed its human resources employees that it was restructuring the Human Resources Department to centralize functions and outsource recruiting. Dkt. 40-1 at 15 (Tucker Dep. 50:1–14). Ascension notified the employees that, in conjunction with the restructuring, it would be eliminating positions in the Human Resources Department. *Id.* at 17 (58:9–20). Employees would be given the first opportunity to apply for new positions. *Id.* (60:1–5). The restructuring lasted from 2015 to 2016. Dkt. 40-5 at 5 (Patrick Decl. ¶ 25).

Throughout 2016, Ascension posted multiple positions related to human resources under the new structure. *See* dkt. 40-6. Ascension required each applicant to submit a form application and resume for each position. Dkt. 40-5 at 4 (Patrick Decl. ¶ 20). A recruiter would review the applications, *id.* (¶ 21),

2

and then provide the hiring decision-makers with the application materials of the candidates best qualified for that position, *id.* (¶ 22). The hiring decision-makers would then decide which candidates were the most qualified for interviews, *id.* (¶ 23), conduct interviews, *id.*, and select the most qualified candidate or candidates for each position, *id.* (¶ 24).

Ms. Tucker applied for twenty open positions with Ascension during the reorganization. *See* dkt. 40-6[1]. She was not invited to interview for nor offered any position. Dkt. 40-1 at 22 (Tucker Dep. 80:23–25).

As part of the company's restructuring, Ascension eliminated Ms. Tucker's position in September 2016. *See* dkt. 40-4. The week prior, Ascension informed Ms. Tucker that she was being laid off. Dkt. 40-1 at 25 (Tucker Dep. 89:16–17).

Ms. Tucker was fifty-nine years old. Dkt. 45 at 2. Prior to working for Ascension, Ms. Tucker had experience working in human resources and taught the subject for several years at a college level. Dkt. 40-1 at 12–13 (Tucker Dep. 39:15–44:20). She has a master's degree in Business Administration and a master's degree in Public Administration in Health Care Administration. *Id.* at 5 (9:13–10:11). When Ascension hired her in 2008, she was working towards her doctorate in business administration. *Id.*

---

[1] Job Openings ("JO"): 72110; 109124; 109650; 111124; 117497; 131523; 138696; 138910; 142312; 144062; 146056; 146492; 146493; 148020; 148021; 148082; 148108; 148193; 150304; 150856. *See* dkt. 40-5.

## B. Procedural

The complaint brings two claims against Ascension: age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count I); and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Count II). Dkt. 1. Ascension has moved for summary judgment on both claims. Dkt. 39.

In her response, Ms. Tucker concedes the sex discrimination claim (Count II). Dkt. 45 at 2 n.1. When a party fails to delineate a claim in her brief in opposition to summary judgment, that claim is "deemed abandoned." *See Maclin v. SBC Ameritech,* 520 F.3d 781, 788 (7th Cir. 2008). Therefore, Ascension's motion for summary judgment is **GRANTED** as to Count II. *See Franklin v. Randolph Cty. Comm'rs*, 1:18-cv-01340, 2019 WL 3037181, at *4 (S.D. Ind. 2019). The Court's analysis is thus limited to Ms. Tucker's claim that her age was the reason she was not selected for any of the twenty positions for which she applied.

For the first six positions, Ascension argues that Ms. Tucker cannot demonstrate that Ascension hired someone substantially younger or left the positions open. Dkt. 40 at 15 (Job Openings 111124, 142312, 144062, 146493, 148020, 138696) (citing dkt. 40-6). For the next six positions, it argues that Ms. Tucker cannot demonstrate that she was qualified. *Id.* at 15–30[2] (Job Openings 72110, 109124, 109650, 117497, 148193, 150856). Ms. Tucker does not respond, *see* dkt. 45 at 7, so Ascension's motion for summary

---

[2] Citing dkt. 40-7; dkt. 40-8; dkt. 40-9; dkt. 40-10; dkt. 40-17; dkt. 40-19.

4

judgment with respect to these twelve positions is **GRANTED**.  *See Roe-Midgett v. CC Servs., Inc.,* 512 F.3d 865, 876 (7th Cir. 2008) (undeveloped argument constitutes waiver).

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

## III.
## Analysis

### A. The ADEA

The ADEA prohibits an employer from, among other things, failing or refusing to hire an individual "because of such individual's age." 29 U.S.C. § 623(a); *see Carson v. Lake Cty.,* 865 F.3d 526, 532 (7th Cir. 2017).  To prevail on an ADEA claim, a plaintiff must "prove, by a preponderance of the evidence,

5

that age was the 'but-for' cause of adverse employment action." *Carson*, 865 F.3d at (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177 (2009)); *see also Lauth v. Covance, Inc.*, 863 F.3d 708, 715 (7th Cir. 2017).  The singular question that matters in an age discrimination case is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's age caused the adverse employment action.  *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019).  One way to present evidence is through the *McDonnell Douglas* burden-shifting framework.  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

There are three steps to the *McDonnell Douglas* burden-shifting framework.  *See* 411 U.S. 792 (1973).  Step one requires the plaintiff to establish by the preponderance of the evidence a prima facie case of discrimination.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  To establish a prima facie case, "a plaintiff must show that: (1) [she] is a member of a protected class; (2) [she] applied for and was qualified for an open position; (3) despite [her] qualifications, [she] was rejected for the position; and (4) a similarly situated person outside [her] protected class was hired for the position instead, or the position remained open."  *Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015).

For step two, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802). "This burden is one of production, not persuasion."  *Reeves v. Sanderson Plumbing Prods.*, 530

6

U.S. 133, 142 (2000). To meet this burden, the employer must "clearly set forth, through the introduction of admissible evidence, the reasons for the employee's rejection." *Burdine*, 450 U.S. at 255. The explanation provided must be legally sufficient to justify a judgment for the employer. *Id.*

Lastly, for step three, "the burden shifts back to the plaintiff to present evidence . . . that the stated reason is a 'pretext,' which, if proven, gives rise to an inference of unlawful discrimination." *McDonnell Douglas*, 411 U.S. at 804. "Although intermediate evidentiary burdens shift back and forth under this framework, 'the ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253).

## B. The positions at issue

For the eight positions at-issue, Ascension does not contest that Ms. Tucker has established her prima facie case. *See* dkt. 40 at 16 ("Ms. Tucker was qualified for some of the job openings, but as to those openings her claims still fail because she cannot demonstrate pretext.")[3]. Rather, Ascension argues it is entitled to summary judgment because it has come forth with legitimate, non-discriminatory reasons for why Ms. Tucker was not offered any of the eight positions. *Id.* Ascension further argues that Ms. Tucker cannot show pretext

---

[3] *See, e.g.,* dkt. 40 at 18–19 (Job Opening 109650) ("Although Ms. Tucker may have met the qualifications for the position…"; *id.* at 26–27 (Job Opening 148108) ("Ms. Tucker might technically meet the required qualifications…"); *id.* at 28 (Job Opening 150304) ("Ms. Tucker met the basic qualifications…"). *See also id.* at 20 (Job Opening 131523); *id.* at 21 (Job Openings 138910, 146056); *id.* at 23 (Job Opening 146492); *id.* at 25–26 (Job Opening 148082).

7

because the candidates who were selected for these eight positions were more qualified than her. *Id.* at 15–30[4] (Job Openings 109650; 131523; 138910; 146056; 146492; 148082; 148108; and 150304).

### C. Ascension's burden of production

At this stage, Ascension bears the burden of production to "clearly expound a legitimate, non-discriminatory reason for its choice." *EEOC v. Target Corp.*, 460 F.3d 946, 957 (7th Cir. 2006); *see also McDonnell Douglas*, 411 U.S. at 802–03. To meet this burden, Ascension "must use admissible evidence to raise a genuine issue of fact as to whether it rejected [Ms. Tucker] based on a discriminatory motive." *Target Corp.*, 460 F.3d at 957 (citing *Burdine*, 450 U.S. at 257). Ascension "must explain its claimed reason for rejecting [Ms. Tucker] clearly enough to allow the court to focus its inquiry on whether [Ascension] honestly believed that reason, and to allow [Ms. Tucker] to identify the kind of evidence [she] must present to demonstrate that the reason is a pretext." *Id.* (internal citations omitted); *see Burdine*, 450 U.S. at 255–56 (the employer must "frame the factual issue with sufficient clarity" so that the plaintiff has an opportunity to "demonstrate pretext"). The sufficiency of Ascension's evidence is "evaluated by the extent to which it fulfills these functions." *Burdine*, 450 U.S. at 256.

---

[4] Citing dkt. 40-9; dkt. 40-11; dkt. 40-12; dkt. 40-13; dkt. 40-15; dkt. 40-16; dkt. 40-18.

### D. Ascension's designated evidence

Ascension argues it has met the burden of production with evidence showing the candidates it hired for the eight positions were better qualified than Ms. Tucker. Dkt. 40 at 16. Ms. Tucker argues that Ascension falls short of meeting its burden of production because it does not designate evidence explaining how the decision-maker for each position applied the hiring criteria when comparing Ms. Tucker's qualifications to those of other applicants. Dkt. 45 at 8–10. Ascension replies that it met its burden by producing evidence of (1) the hiring process it used to fill the positions, (2) the criteria used in selecting employees for each position, and (3) the qualifications of the chosen candidates as well as Ms. Tucker's qualifications. Dkt. 46 at 3–6.

Ascension's designated evidence includes: a declaration from Stuart Patrick, Senior Director of Human Resources, which outlines Ascension's hiring procedure, dkt. 40-5; Ms. Tucker's resume, dkt. 40-21; a Hiring Details Chart, which lists each position Ms. Tucker applied for, the names of the hirers and recruiters, and the names and ages of the hired candidates, dkt. 40-6; each job posting that Ms. Tucker applied and submitted resumes for, and applications for each of the hired candidates, *see* dkt. 40-9, dkt. 40-11, dkt. 40-12; dkt. 40-13; dkt. 40-15, dkt. 40-16, dkt. 40-18.

Ascension's hiring process involved subjective decision-making by at least two people in selecting the candidate who was hired for each position. *See* dkt. 40-5 (Patrick Decl.). Through the process, the pool of applicants was winnowed down until a hiring decision made. First, a recruiter reviewed the

applications to determine which applicants were best qualified. *Id.* at 4 (¶ 21). Only the applications of the candidates determined by the recruiter to be best qualified were forwarded to the decision-maker who was responsible for making the hiring decision. *Id.* (¶ 22). Second, the respective decision-maker reviewed the applications identified by the recruiter and determined which were best qualified and thus offered an interview. *Id.* (¶ 23). Last, after conducting interviews, the decision-maker determined which applicants were the best qualified and thus offered a job. *Id.* at 5 (¶ 24).

Ascension has not designated evidence that connects the designated evidence to each hiring decision. Hiring for each position involved three decision-points where someone at Ascension other than Mr. Patrick subjectively evaluated applicants' qualifications to decide who was the best qualified candidate. But there is no designated evidence: from the recruiter explaining how he or she evaluated Ms. Tucker's qualifications against those of the candidates who the recruiter determined were the most qualified; from the decision-maker explaining how he or she evaluated the qualifications of the candidates who were determined to be the most qualified and offered an interview; from the decision-maker explaining how he or she evaluated the qualifications of the candidates who were determined to best qualified and offered a position; or regarding how any recruiter or decision-maker evaluated the applicants' qualifications relative to one another. Although the Hiring Details Chart identifies the recruiters and decision-makers for each position, dkt. 40-6, Ascension's designated evidence does not reveal at what stage Ms.

10

Tucker was determined to not be one of the best qualified, who made that decision, or the specific reasons for the decision with respect to each position.

Ascension argues it satisfied the burden of production by setting forth evidence of the process followed in selecting applicants along with evidence of the applicants' qualifications and those of Ms. Tucker. Dkt. 46 at 3. But like the assertion that an applicant gave a "poor interview" was not enough to meet the burden of production, Ascension's assertion that Ms. Tucker was not the "best qualified" is not enough. *See Target Corp.*, 460 F.3d at 957 (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1034–35 (11th Cir. 2000)). A generic statement that the employer hired the best qualified person without any further explanation does not create a genuine issue of fact as to whether the employer rejected the applicant based on her age. *Target Corp.*, 460 F.3d at 958. Nor does such a generic statement leave a "full and fair opportunity" for the employee to rebut the given reason as a pretext. *Id.*; *see also Burdine*, 450 U.S. at 258.

An employer can meet its burden of production by articulating a legitimate non-discriminatory reason through the affidavit or testimony of the decision-maker. *See, e.g., Oliver v. Joint Logistics Managers, Inc.*, No. 4:15-cv-04014-SLD-JEH, 2017 WL 736873, at *4 (C.D. Ill. Feb. 24, 2017), *aff'd*, 893 F.3d 408, 413 (7th Cir. 2018); *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 826 (7th Cir. 2006). Additionally, the employer may use other admissible evidence, such as a decision-maker's memorandum, detailing reasons for his or her hiring decisions. *See, e.g., Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712,

725 (7th Cir. 2005). Either way, the "employer must articulate reasonably specific facts that explain how it formed its opinion of the applicant in order to meet its burden under *Burdine*." *Target Corp.*, 460 F.3d at 957.

Ascension's proffered reasons why other candidates were selected over Ms. Tucker, such as more familiarity with the department or relevant work or educational experience, s*ee* dkt. 40 at 20–23, do not suffice because they are not supported by designated evidence. *Burdine*, 450 U.S. at 255 n.9 (an employer cannot meet its burden by argument of counsel). For example, Ascension asserts that it offered Rebecca Cook the "In Market Learning and Development SME" position because she was the better candidate. Dkt. 40 at 22. Ms. Cook and Ms. Tucker were counterparts at St. Vincent and had the same responsibilities. Dkt. 40-1 at 16 (Tucker Dep. 53:25–54:7). While Ascension's brief offers some explanation for the decision, the explanation is not supported by designated evidence. Putting explanations such as this aside, Ascension's designated evidence is not sufficient to create a genuine issue of fact as to whether Ascension rejected Ms. Tucker because of her age so it does not satisfy the burden of production. *Target Corp.*, 460 F.3d at 958.

Ascension argues there is no evidence from which a factfinder could find that Ms. Tucker was not offered any of the eight positions because of her age. Dkt. at 46 at 2. Not so. The facts that establish the prima facie case of discrimination under *McDonnell Douglas* are sufficient to support an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802; *McDaniel*, 940 F.3d at 368 ("All things being equal, if an employer takes an action against one

12

employee in a protected class but not another outside that class, one can infer discrimination.") (quoting *Filar v. Bd. of Educ.*, 526 F.3d 1054, 1061 (7th Cir. 2008). Ascension correctly states that it need not persuade the Court at this stage that it did not discriminate. *Target Corp.*, 460 F.3d at 957. But it must designate admissible evidence sufficient to meet its burden of production. *Id.* It has not done that here.

# IV.
# Conclusion

Ascension's motion for summary judgment on Count I is **DENIED** and on Count II is **GRANTED**. Dkt. [39].

**SO ORDERED.**

Date: 11/8/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Samuel Mark Adams
JOHN H. HASKIN & ASSOCIATES, LLC
sadams@jhaskinlaw.com

Zachary A. Ahonen
JACKSON LEWIS PC (Indianapolis)
zachary.ahonen@jacksonlewis.com

Drew Christopher Ambrose
JACKSON LEWIS PC (Indianapolis)
drew.ambrose@jacksonlewis.com

John H. Haskin
JOHN H. HASKIN & ASSOCIATES, LLC
jhaskin@jhaskinlaw.com

Michael W. Padgett
JACKSON LEWIS PC (Indianapolis)
padgettm@jacksonlewis.com